PERRY BROTHERS VARIETY STORES, INC. v. GRACE L. LAYTON ET AL.

No. 5444.   Decided March 12, 1930.
(25 S. W., 2d Series, 310.)

*Fairchild & Redditt, R. A. McAlister, S. M. Adams, Ben H. Powell,* and *J. A. Rauhut,* for appellant.

A communication made in good faith in reference to a matter in which the person communicating has an interest or in which the public has an interest is privileged if made to another for the purpose of protecting that interest, and a communication made in the discharge of a duty and looking to the prevention of wrong towards another or the public is so privileged when made in good faith. And, where a store manager, bona fide, in honest but mistaken belief that a customer has stolen goods from the store, and in pursuance of his duty to his employers to see that the merchandise in the store is taken care of and not stolen, accosts such customer and makes inquiries and statements for the purpose of locating and securing the return of the goods, and in so doing charges the customer with theft, the occasion is one of qualified privilege, rebutting the legal inference of malice arising from the publication of the charge, and, in order to recover damages for the publication of the words in an action for slander, plaintiff must prove that the speaker was actuated by express malice or evil motive in uttering the words. Missouri Pacific Railway v. Richmond, 73 Texas, 568; Harrison v. Burk, 5 El. & Bl., 348; International & Great Northern R. Co. v. Edmundson, 222 S. W., 181; Cotulla v. Kerr, 74 Texas, 94, 11 S. W., 1058; Cranfill v. Hayden, 55 S. W., 805; Gulf, C. & S. F. Ry. Co. v. Floore, 42 S. W., 607; Bohlinger v. Germania Life Ins. Co., 140 S. W., 257; Hoover v. Jordan, 27 Colo. App., 515, 150 Pac., 333; Fahr v. Hayes, 50 N. J. L., 275, 13 Atl. 271; Lawless v. Anglo-Egyptian Cotton Co., L. R., 4 Q. B., 262; Taylor v. Hawkins, 16 Q. B., 308; Caruth v. Dallas Gas Co., 282 S. W., 384; Foley Bros. Dry Goods Co. v. McClain, 231 S. W., 459; Brow v. Hathaway, 13 Allen, 239; Toogood v. Spyring, 1 C. M. & R., 181; McCarty v. Lambley, 20 App. Div. Rep. 264 (N. Y. Sup. Ct.); Stivers v. Allen, 196 Pac., 663; Padmore v. Lawrence, 11 Ad. & El., 380; Crisp v. Gill, 5 W. R., 494; Taylor v. Hawkins, 16 Q. B., 308; Wallace v. Carroll, 11 Irish. Com. L. R., 485; Robb v. Morrison, 20 S. R. N. S. W., 163; MacIntosh v. Cohen, 24 N. Z. L. R., 625.

No action for slander can be based upon a communication of words to the plaintiff, the party of whom the words are spoken, since that communication of the words is not a publication in law,

and since plaintiff's reputation is not injured by her hearing the words; and where words slanderous of plaintiff are addressed to her, in the hearing of the third persons, the sole basis of a civil action for slander must be the publication to the third persons. Gildner v. Busse, 3 Ont. L. R., 561; Tench v. Great W. Ry., 32 Up. Can. Q. B., 452; 36 Corpus Juris 1223, Section 169; Stivers v. Allen, 196 Pac. 663, 15 A. L. R., 245; Vacicek v. Trojack, 226 S. W., 505; Koehler v. Sircovich, 269 S. W., 812; Missouri Pacific Ry. Co. v. Richmond, 73 Texas, 568; Missouri Pacific Ry. Co. v. Behee, 21 S. W., 384; International & G. N. R. Co. v. Edmundson, 222 S. W., 181; Foley Bros. Dry Goods Co. v. McClain, 231 S. W., 450; Briggs v. Garrett, 111 Pa. St., 417; Schulze v. Jalonick, 44 S. W., 580; Bohlinger v. Germania Life Ins. Co., 140 S. W., 257; Garey v. Jackson, 193 S. W., 920; Southern Ice Co. v. Black, 189 S. W., 861; Sheftall v. Central of Georgia Ry., 123 Ga., 589; Lanham v. Keys, 31 Ga. App., 635; Phillips v. Bradshaw, 167 Ala., 199, 181 Ala., 541; Denver Public Warehouse Co. v. Holloway, 34 Colo., 432; Hebner v. Great Northern Ry. Co., 78 Minn., 289, 80 N. W., 1128; McKenzie v. W. T. Burns International Detective Agency, Inc., 149 Minn. 311; Pittard v. Oliver, 1 Q. B., 474; Somerville v. Hawkins, 10 C. B., 583.

A communication made bona fide upon any subject matter in which the party communicating has an interest or in reference to which he has a duty is privileged if made to a person having a corresponding interest or duty, although it contained incriminatory matter which without this privilege would be slanderous and actionable, and when words addressed to plaintiff and having for their purpose the recovery of goods suspected to have been stolen from a store are published by the store manager, bona fide in honest belief of the truth of the charge and *without malice,* to other employees in the store who were present and overheard the conversation, it being the duty of the manager and the other employees to see that the merchandise in the store is taken care of and not stolen, and to protect in general the interests of the owner of the store in connection with the store, the communication is qualifiedly or conditionally privileged and there can be no recovery in consequence of the publication to them, though the words impute the commission of a crime and are false in fact.

The defense of qualified or conditional privilege in the publication of an alleged slander is not lost *per se* by the mere fact that the words are incidentally overheard by persons other than those im-

mediately interested, not present by the invitation or design of defendant, although the incidental excessive publication may be evidence upon the fact issue of malice; and, where defendant's store manager, in the honest belief that goods had been stolen from the store by plaintiff, for the purpose of recovering the goods, bona fide and in the discharge of his duty, utters allegedly slanderous words to plaintiff, and in so doing is overheard by disinterested persons casually present, that publication not being in any sense sought for by defendant, or those connected with the store, the occasion is one of prima facie privilege, and the plaintiff, to recover in an action for slander based upon the publication, must prove the words were spoken by the manager with *malice in fact*. 25 Cyc., 387; 36 C. J., 1248–1249, Secs., 218, 219; 18 Am. and Eng. Encyc. of Law (2d Ed.) 1047; Perry Bros. Variety Stores v. Layton, 7 S. W., (2d) 190; Caruth v. Dallas Gas Co., 282 S. W., 334; Foley Bros. Dry Goods Co. v. McClain, 231 S. W., 459; Gulf C. & S. F. Ry. Co. v. Floore, 42 S. W., 607; Koehler v. Sircovich, 269 S. W., 812; Layton v. Hightower, 12 S. W., (2d) 110; I. & G. N. Ry. Co. v. Edmundson, 222 S. W., 181; Holt v. Parsons, 23 Texas, 9; Behee v. Missouri P. Ry. Co., 71 Texas, 424; Kenney v. Gurley, 208 Ala., 623, 26 A. L. R., 813; Peak v. Taubman, 158 S. W., 656; Cobb v. Garlington, 193 S. W., 463; Lawless v. Ellis, 281 S. W., 1090; Toogood v. Spyring, 1 C. M. & R., 181; Kine v. Sewell, 3 M. & W., 297; Padmore v. Lawrence, 11 Ad. & El., 380; Thompson v. Dashwood, 11 Q. B. D., 43; Taylor v. Hawkins, 16 Q. B., 308; Crisp v. Gill, 5 W. R., 494; Davis v. Snead, L. R., 5 Q. B., 608; Jones v. Thomas, 53 L. T., 678; Henwood v. Harrison, L. R. 7 C. P., 606; Pittard v. Oliver, 1 Q. B., 474; Oddy v. Paulet, 4 F. & F., 1009; Townshend on Slander and Libel (3d Ed.,) p. 351, 352, 459, 462; Fowler v. Homer, 3 Camp., 294; Lawless v. Anglo-Egyptian Cotton Co., L. R., 4 Q. B., 262; Boxsius v. Goblet Freres, 1 Q. B., 842; Edmondson v. Birch & Co., Ltd., 1 K. B., 371; Roff v. British and French Chemical Manufacturing Co., 2 K. B., 677; Morgan v. Wallis, 33 T. L. R., 495; M. Isaac & Sons, Ltd., v. Cook, 2 K. B., 39; Pullman v. Hill & Co., 1 Q. B., 524; Parsons v. Survey, 4 F. & F., 247; Broughton v. McGrew, 39 Fed., 672, 5 L. R. A., 406; Phillips v. Bradshaw, 167 Ala., 199, 181 Ala., 541; Polk v. Missouri P. Ry. Co., 156 Ala., 84, 245 S. W., 186; Bohlinger v. Germania Life Ins. Co., 100 Ark., 477, 140 S. W., 257; Denver Public Warehouse Co. v. Holloway, 34 Colo., 432, 3 L. R. A., (N. S.) 699; Abraham v. Baldwin, 52 Fla. 151; Sheftall v. Central of Georgia

R. Co., 123 Ga., 589; Lanham v. Keys, 31 Ga., App., 635; Redgate v. Roush, 61 Kan., 480, 48 L. R. A., 236; Coleman v. MacLennan, 78 Kan., 711, 20 L. R. A., (N. S.) 361; Conrad v. Roberts, 95 Kan., 180, L. R. A., 1915 E, 131; Burton v. Dickson, 104 Kan., 594; Fresh v. Cutter, 73 Md., 87, 10 L. R. A., 67; Farnsworth v. Storrs, 5 Cushing, 412; Brow v. Hathaway, 13 Allen, 239; Hatch v. Lane, 105 Mass., 394; Pion v. Caron, 237 Mass., 107; Flynn v. Boglarsky, 164 Mich., 513, 32 L. R. A., (N. S.) 740; Smith v. Smith, 73 Mich., 445, 3 L. R. A., 52; McKenzie v. Wm. T. Burns Int'l. Detective Agency, Inc., 149 Minn., 311; Butler v. Freyman, 260 S. W., 523; Fahr v. Hayes, 50 N. J. L., 275, 13 Atl., 271; Kruse v. Rabe, 79 Atl., 316; McCarty v. Lambley, 20 App. Div. Rep., 264; Gattis v. Kilgo, 140 N. C., 106, 52 S. E., 249; Fields v. Bynum, 156 N. C., 413, 72 S. E., 449; Shurtleff v. Stevens, 51 Vt., 501; Buckstaff v. Hicks, 94 Wis., 34; Arnold v. Ingram, 151 Wis., 438, 138 N. W., 111; Gildner v. Busse, 3 Ont. L. Rep., 561; Gorst v. Barr, 13 Ont. Rep., 644; Wells v. Lindop, 13 Ont. Rep., 434; Ward v. McBride, 24 Ont. L. Rep., 555; Gorman v. Urquhart, 34 New Brunswick Rep., 322; Tench v. Great Western Ry. Co., 32 Up. Can. Q. B., 452; Moran v. O'Regan, 38 New Brunswick, 189; Quillinan v. Stewart, 38 Ont. L. R., 623; Wallace v. Carroll, 11 Irish Com. L. R., 485; Hodges v. Glass, (Sup. Ct. N. Z.) O. B. & F's Rep., 1879, p. 66; MacIntosh v. Cohen, 24 N. Z. L. R., 625; Hill v. Balkind, N. Z. L. R., 1918, 740; Robb v. Morrison, 20 S. R. N. S. W., 163; Botha v. Brink, Buchanan 1878, p. 128, 3 Roscoe Cape of Good Hope, R. Sup. Ct. 1861–78, p. 37; Tossell v. Farrant, 1909 Transvall L. R., 693.

*V. E. Middlebrook* and *Seale & Denman,* for appellees.

A communication to a person charging theft is actionable per se, and when made to said person in the presence and hearing of third parties who are not interested in respect of the matter it is not necessary to plead and prove malice in order to recover actual damages. Ledgerwood v. Elliott, 51 S. W., 872; I. & G. N. Ry. Co. v. Edmundson, 222 S. W., 183; Mayo v. Goldman, 122 S. W., 449; Belo & Company v. Fuller, 84 Texas, 450; Allan v. Ernest, 145 S. W., 1101; Smith v. Dawson, 234 S. W., 690; Grand Lodge v. Rose, 243 S. W., 496; Koehler v. Sircovich, 269 S. W., 812; Towns. Sland. & Lib. Sec. 176; Newell on Sland. & Lib. 4th Ed. Sec. 424, page 450.

Mr. Presiding Judge HARVEY delivered the opinion of the Commission of Appeals, Section A.

The Court of Civil Appeals at Beaumont has submitted the following certificate and certified question:

"In obedience to Your Honor's writ of mandamus in this cause, we make the following statement of the nature and result of this suit as a basis for the question of law hereinafter propounded.

"This was an action brought by Mrs. Grace L. Layton, joined pro forma by her husband, Virgil Layton, against Perry Bros. Variety Stores, Inc., for recovery of damages for slander. Mrs. Layton, in her petition, alleged that on or about April 21, 1926, she went into the defendant's store in the City of Nacogdoches for the purpose of purchasing some small articles of dry goods, and that while she was in the store and after she had purchased the articles and was about to leave the store one Grady Barr, who was an employee of defendant and general manager of defendant's store, said to Mrs. Layton: 'Where are those bloomers you took from the store while ago?' It was alleged that by these words uttered to Mrs. Layton, Barr meant to charge and did charge her with theft of a pair of bloomers, from defendant's store. It was further alleged by Mrs. Layton that she did not take the bloomers, as charged by Barr, and was not guilty of the crime imputed to her, and that she at the time stated to Barr that she had not taken the pair of bloomers and that she was willing for him to search her, but that Barr insisted that she had stolen the bloomers from the store, though he declined to search her as she requested.

"It was further alleged that the words complained of and just quoted as charging Mrs. Layton with the theft of the pair of bloomers were uttered in an angry tone of voice, and that the charge was false and known to be false by Barr at the time it was made. There was no allegation in the petition that Barr, in making the charge complained of, was actuated by malice, but it was alleged in the petition that the accusation against her was not made in good faith. The petition further alleged that Mrs. Layton was greatly shocked and grieved on account of the charge, and that she became suddenly very ill in consequence thereof and remained ill and confined to her bed for a long period of time, and that her health had become greatly impaired, and that she had suffered actual damages in the sum of $10,000 in consequence of the slanderous charge.

"The defendant answered by general demurrer, a number of special exceptions, general denial, a plea of truth of the charge, and

further that the charge complained of as slanderous was made on a privileged occasion. The general demurrer and all special exceptions were overruled and the case was submitted to the jury upon five special issues, in answer to which the jury found:

"(1)    That Grady Barr uttered the slanderous words to Mrs. Layton as alleged in her petition;

"(2)    That the charge was false;

"(3)    That persons other than Mrs. Layton heard the charge when made by Barr;

"(4)    That Mrs. Layton sustained actual damages in the sum of $6,000 in consequence of the charge; and;

"(5)    That Barr made no apology to Mrs. Layton after having made the charge.

"The trial court did not submit for the jury's consideration any issue of malice or bad faith on the part of Barr in making the charge against Mrs. Layton.

"After the verdict had been returned, the trial court, upon plaintiff's motion therefor, entered judgment against defendant in favor of Mrs. Layton for actual damages in the sum of $6,000, and from that judgment this appeal was duly prosecuted.

"The facts upon which the judgment in this case rests are as follows:

"The appellant, Perry Bros. Variety Stores, Inc., is a private corporation engaged in the mercantile business and operates a chain of stores, about twenty-two in number, in different cities and towns in this state, one of which is located in the City of Nacogdoches, and Grady Barr, at the time of the transaction involved here, was appellant's manager of the Nacogdoches store. On the morning of April 21, 1926, Mrs. Grace L. Layton and her mother-in-law, Mrs. Green B. Layton, and her sister-in-law, Mrs. Mary Ann Webb, all of whom lived in the City of Nacogdoches, went from their home to appellant's store in Nacogdoches to purchase some small articles of dry goods for Mrs. Layton. They rode in Mrs. Webb's automobile, and when they got to the store Mrs. Grace L. Layton, the plaintiff, and her sister-in-law, Mrs. Webb, got out of the car and went into appellant's store, and Mrs. Layton purchased some small articles of dry goods, and while it was being wrapped up for her she was in conversation with Mr. Grady Barr in the store, and during the conversation Mr. Barr engaged her or made arrangements with her to come to the store on Saturday of that week and work in the store as a sales lady, as the store would have on a special sale that

day. After this engagement had been made, Mrs. Grace L. Layton and Mrs. Webb started out of the store and passed the counter where the bloomers were kept, and Mrs. Layton picked up a pair of bloomers and was looking at them and remarked to Mrs. Webb how cute and pretty the bloomers were, and then laid them back on the counter and passed on to the cashier's desk and got her package that she had purchased, and then she and Mrs. Webb went out of the store and back to the car, which was standing near the store. After they got to the car, Mrs. Grace L. Layton decided to go back into the store and purchase another small article, and Mrs. Webb went back with her. Mrs. Layton bought the article and just before she departed from the store again Mr. Grady Barr, appellant's manager, said to her, 'I want to speak to you, Mrs. Layton.' Whereupon, Mrs. Layton and Mr. Barr walked back near the center of the store and Mr. Barr said to her, 'Where are those bloomers you got while ago?' To this Mrs. Layton replied that she did not get any bloomers, but Mr. Barr insisted that she did get them, and told her so several times, and Mr. Barr still insisting that she did get the bloomers further said to Mrs. Layton, 'Mrs. Layton, I want those bloomers you got while ago.' Mrs. Layton then requested Mr. Barr to search her and told him again that she did not get the bloomers. Thereupon, Mr. Barr called to Miss Moorer, who was appellant's young lady cashier in the store, and asked Miss Moorer if she wrapped up any bloomers for Mrs. Layton that morning, to which Miss Moorer replied that she did not, and further stated that she did not see Mrs. Layton get any bloomers.

"At the time Mr. Barr was talking to Mrs. Layton about the bloomers there were three of appellant's clerks in the store besides Mr. Barr. There were also present in the store according to Mrs. Layton's testimony, two women whose names she did not know, and she had never found out who these women were up to the time of the trial. According to Mrs. Layton's testimony, these unknown women were near enough to hear what Mr. Barr said to her at the time he accused her of taking the bloomers, and accepting the testimony of Mrs. Layton on this point, we hold that her evidence was sufficient to authorize a finding that these two unknown women did hear what Mr. Barr said to Mrs. Layton at that time. And, according to Mrs. Layton's testimony, Miss Moorer, the cashier, and Frank Crain, one of the clerks in the store, were near enough to hear what Mr. Barr said to Mrs. Layton at the time he accused her of taking the bloomers, although both Miss Moorer and Mr.

Crain testified positively that they did not hear any part of the conversation between Mr. Barr and Mrs. Layton at that time. But accepting Mrs. Layton's testimony on this point, we hold that her evidence was sufficient to warrant a finding that Miss Moorer and Mr. Crain did hear what Mr. Barr said to her at that time.

"After Mr. Barr had accused Mrs. Layton of taking the bloomers, and after she had denied that she took them and requested him to search her, which he refused to do, Mr. Barr advised Mrs. Layton not to say anything about what had occurred between them, for the reason, as he stated, that it might cause more trouble, and that it was better to let the matter drop where it was. Thereupon Mrs. Layton went out of the store and back to the car in which her mother-in-law and Mrs. Webb, her sister-in-law, were sitting, and she then told her mother-in-law and sister-in-law what had happened in the store, and that Mr. Barr had accused her of stealing a pair of bloomers. Mrs. Layton then got in the car and her mother-in-law and sister-in-law then went into appellant's store to talk to Mr. Barr about the matter. Mrs. Webb, the sister-in-law, stated to Mr. Barr, in substance, that Mrs. Layton had not taken bloomers from the store, and that the car was hers, Mrs. Webb's, and that Mr. Barr could search the car for the bloomers, but Mr. Barr refused to do so. The mother-in-law also told Mr. Barr that Mrs. Layton did not bring any bloomers to the car and that there were no bloomers in the car, and that Mrs. Layton did not have the bloomers at all. During this conversation between Mr. Barr, Mrs. Layton's sister-in-law and her mother-in-law, Mr. Barr, according to Mrs. Webb, spoke in a 'medium' tone of voice and did not appear to be angry. According to the testimony of the mother-in-law, Mrs. Green B. Layton, Mr. Barr did not speak in a 'rough manner' and was not 'discourteous.' According to the testimony of both Mrs. Webb and the mother-in-law, Mr. Barr honestly believed that Mrs. Layton had taken the bloomers as he had charged her with doing. While these three, Mr. Barr, Mrs. Green B. Layton and Mrs. Webb, were still talking, somewhere about the center of the store room, Mrs. Layton got out of the car and came back into the store and went up to where the conversation was going on and in a very short while she fainted and fell on the floor and it was necessary that she be carried to and put in the car and Mr. Barr had to carry her to the car, which Mrs. Webb drove away. Mrs. Layton was greatly shocked on account of the charge made by Mr. Barr against her, and was confined to her bed several days in consequence thereof, and up to the time of the trial she had been nervous and sick from the effects of the charge against her.

"The undisputed evidence in the record shows that Mr. Grady Barr was appellant's manager of the Nacogdoches store, and that it was his duty, as well as the duty of all the clerks in the store, to see that the merchandise in the store was taken care of and not stolen by any one and to protect in general the interests of appellant in connection with the store. There is no evidence that shows or tends to show who the two women were that were in appellant's store, other than the clerks, at the time Mr. Barr charged Mrs. Layton with taking the bloomers, nor is there any evidence in the record showing or tending to show that these two strange women were in the store by the design or with the consent or at the invitation of Mr. Barr at the time he was talking to Mrs. Layton about the bloomers. On the contrary, all the evidence negatives the idea that these two strange women were present by the invitation of Mr. Barr. And if these two strange women were in the store, as testified to by Mrs. Layton, nevertheless all the evidence shows that they merely happened to be there without any design or invitation on the part of any one connected with the store and were merely casually present.

"When this cause was appealed to this court one of the reasons urged by appellant for reversal of the trial court's judgment was that the undisputed evidence adduced upon the trial showed that this slanderous charge complained of by Mrs. Layton was qualifiedly privileged and that since it was not alleged that the charge was maliciously made and that since the undisputed evidence showed that the charge, even if untrue, was honestly believed by Grady Barr to be true at the time he made it, and therefore could not have been made in bad faith, there could be no liability against appellant and that it was the duty of this court to reverse and render the judgment.

"When we came to consider the case after submission we found from examination of the record that there was no allegation of malice in the plaintiffs' petition, nor was there anything in the evidence adduced upon the trial tending to show malice on the part of Mr. Barr at the time he made the charge complained of. We also found and still hold that the undisputed evidence in the case as adduced upon the trial showed that at the time Grady Barr accused Mrs. Layton of taking the bloomers he honestly believed that she had taken them and that therefore it must be held that the charge against Mrs. Layton was not made in bad faith. We also found upon the undisputed facts as disclosed by the record that the two strange women who were in appellant's store at the time Grady Barr charged

Mrs. Layton with taking the bloomers were not present by the design or with the invitation of Mr. Barr or any of the clerks in the appellant's store, and we held that even if these two strange women did hear what Mr. Barr said to Mrs. Layton about the bloomers, under such circumstances, it could not have the legal effect to destroy the privilege under which the charge was made by Mr. Barr and we therefore held that the appellant was not liable and reversed and rendered the judgment, as will be seen in the opinion of this court reported in 7 S. W., (2d) 190. The authorities upon which we based our opinion will be found therein.

"Question No. 1. Upon the pleadings of the parties and the undisputed facts as we have stated them above, was this court in error in holding that there was no liability shown on the part of appellant for the reason that the slanderous charge complained of was qualifiedly privileged?"

It is settled in this State that a communication made in good faith, in reference to a matter in which the person communicating has an interest, is privileged if made to another for the purpose of protecting that interest, and that a communication made in the discharge of a duty and looking to the prevention of wrong towards another is so privileged when made in good faith. Mo. Pac. Ry. Co. v. Richmond, 73 Texas, 568; Simmons v. Dickson, 110 Texas, 230; I. & G. N. Ry. Co., v. Edmundson, 222 S. W., 181.

The precise question to be determined here is whether or not the fact that the utterances of Barr, imputing the crime of theft to Mrs. Layton, were made in the presence and hearing of the two woman customers who had no interest in the subject matter of the communication, and whose presence was casual and not by design of Barr, renders the communication unprivileged. In conference with the Supreme Court, we have been instructed to hold that the defamatory statements of Barr lost their privileged character by reason of the fact that same were made in a store open to the general public, and in the presence and hearing of customers who were there on the implied invitation of the appellant, and who had no interest in the subject matter of the statements.

This holding sufficiently answers the question certified, and we recommend that it be so answered.

The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

C. M. Cureton, Chief Justice.