### S. H. KRESS & CO. v. DE MONT.
#### (No. 7927.)

(Court of Civil Appeals of Texas. Galveston. June 16, 1920. Rehearing Denied Oct. 7, 1920.)

**1. False imprisonment ⬅5—Touching plaintiff and commanding her to return to defendant's store was not actionable.**

The fact that defendant's employé commanded plaintiff, who was suspected of shoplifting, to return to defendant's store, and laid one hand on plaintiff's arm, whereupon plaintiff returned without objection or resistance, does not show "false imprisonment" as defined in Pen. Code 1911, arts. 1039–1041, which require detention by violence or threat.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, False Imprisonment.]

**2. Appeal and error ⬅855—Verdict not sustained on theory supported by petition, but not submitted to jury.**

Where the only issue submitted to the jury was the issue of false imprisonment, which was not supported by the evidence, the verdict for plaintiff cannot be sustained on the ground that the petition is sufficient to support recovery on another theory which was not submitted to the jury.

Appeal from Harris County Court; Roy Campbell, Judge.

Action by Mrs. M. N. De Mont against S. H. Kress & Co. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Stewarts and Guy Graham, all of Houston, for appellant.

Jno. C. Williams and Frank L. Benler, both of Houston, for appellee.

GRAVES, J. This appeal proceeds from a judgment entered upon a jury's award of $1,000 to the appellee as damages for the false imprisonment of herself at appellant's hands.

The substance of the material facts, as given by the appellee herself, Mrs. De Mont, and evidently found by the jury to be true, were these:

She bought, paid for, and took unwrapped in her shopping basket from appellant's store three small articles of insignificant value. After she had gotten out onto the sidewalk of the public street running past the store, Mrs. Ramsey, an employé of appellant whose duties were to watch for and keep down shoplifting, followed her from the store, took her by the arm, and stopped her, saying:

"I just saw you go out of Kress', and you have some of their goods in your basket. What are you doing with them?"

---

On being assured by the appellee that she had bought and paid for the goods, Mrs. Ramsey said:

"Come back with me and prove it, then."

Although Mrs. Ramsey was a frail, elderly, and smaller woman than Mrs. De Mont, whom the latter neither feared nor thought to be armed, she said this in a loud commanding tone, wheeled Mrs. De Mont around, and took her back into the store and to various clerks, holding her by the arm all the while. As to why and how she came to go back, the appellee testified:

"I did not go back to Kress' store from where she took hold of me of my own accord; I went back at her command. I protested against going back. When she took me in the store, in going from one place to the other in the store she still had hold of me; she didn't have hold of me, but she was just touching my arm; she still kept in touch with my arm. When she moved me from one place to the other in the store I moved to the different places of her own accord, not my accord. I did not make a move in that store that was not under her orders or her direction."

On cross and redirect examination she further said:

"My dress was too substantial to have been torn in that mêlée, and then I went along submissively. None of my clothes were torn there that evening, and my hair was not disheveled. Mrs. Ramsey laid her hands on my arm, on my right arm. She grabbed me by the arm, but I did not pull loose. I was submissive. I didn't examine Mrs. Ramsey to see if she was armed, but I hardly think she was armed. She didn't have a chance to threaten me because I went with her. She did not scare me particularly. It is not a fact that I was scared to death; when you are innocent you are never scared. * * * She didn't have to use any violence towards me because I just went along submissively. The first thing she said to me when she approached me on the sidewalk was: 'You just came out of Kress' store. What are you doing with those goods in your basket?' I told her I purchased them there, and she said: 'Then come back and prove it.' I then said: 'Very well; I will.' And then I went back with her. She did not drag me back along the streets shrieking and screaming for help; that would have been an episode. She did not drag me back; I went back willingly. She took my arm and took me back; she brought me back. I went back willingly. She took me back; you might say that she forcibly took me back. She took me back, but not by the hair of my head. I don't think she could have dragged me back; she commanded me to come back with her. * * * She could not have dragged me along the streets, because she was such a frail woman, but I was compelled to go. * * * She told me, in substance, that I would have to go back there and prove that I bought those goods. I went back with her to the store and succeeded in finding two of the clerks that sold the goods to me."

After defining false imprisonment to mean "for one person to stop or prevent another person from going in any direction such person may see proper to go, or to compel such person to go to some other place than where such person desires to go," the court, among a number of inquiries along that line, first asked the jury to determine whether or not Mrs. Ramsey had falsely imprisoned Mrs. De Mont, as that term had been so defined. With the evidence of the general substance and effect stated, they answered that she had, and as a consequence accordingly assessed the appellee's damages at the amount given.

[1] We are unable to approve this result, believing that, under our statutes and decisions, neither the court's charge nor the evidence went far enough to make out a case of false imprisonment. That term is thus defined in articles 1039 to 1041, inclusive, of our Penal Code:

"1039. False imprisonment is the willful detention of another against his consent, and where it is not expressly authorized by law, whether such detention be effected by an assault, by actual violence to the person, by threats or by any other means which restrains the party so detained from removing from one place to another as he may see proper.

"1040. The assault or violence may be such as is spoken of in defining the offense of assault and battery.

"1041. The impediment must be such as is in its nature calculated to detain the person and from which he cannot by ordinary means relieve himself."

Since no threat of any sort was mentioned or involved here, that form of the offense thus denounced, and with which succeeding article 1042 of the Code deals, need not be given further mention or consideration.

Neither were the other essential requirements of these statutes met. There was no actual violence to the person—merely a touching of the arm—no injury inflicted, nor intent to visit one shown, and so no assault within the meaning of the preceding article 1008. Moreover, the court's definition stops short of advising the jury what the nature and extent of the impediment must be, while the evidence not only wholly fails to disclose the existence in Mrs. Ramsey of an ability, purpose, or effort to overcome or circumvent any resistance by ordinary means on Mrs. De Mont's part, but affirmatively repels any such suggestion; indeed, the appellee herself repeatedly admits that she used no means of any sort to relieve herself, but willingly went back. The impediment here, therefore, was nothing but the order of a frail, elderly, and smaller woman to another, which the latter, though conscious of its lack of authority because based on an untrue imputation, and without any attempt to relieve herself, chose to submissively accept as a compelling command. That could not be said to have been a hindrance of such nature as

was calculated to detain a woman like Mrs. De Mont, and one from which she could not by ordinary means have relieved herself. One may not in such circumstances supinely submit to the mere verbal direction of another, and then recover damages as for false imprisonment. See Maner v. State, 8 Tex. App. 361; McClure v. State, 26 Tex. App. 102, 9 S. W. 353.

[2] It may be that the petition of the plaintiff below, if given the benefit of every reasonable intendment, stated a cause of action upon the facts alleged without reference to whether or not they amounted in law to a false imprisonment, but, since that was the only theory submitted to the jury, and their verdict rested solely upon it, the award cannot be permitted to stand. The judgment has accordingly been reversed, and the cause remanded.

Reversed and remanded.